UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LABELBOX, INC., | Case No.  25-cv-10159-JSC |
| Plaintiff, | |
| v. | **ORDER RE: V7 DEFENDANTS' MOTION TO DISMISS** |
| KSHITIJ GUJARATI, et al., | Re: Dkt. No. 75 |
| Defendants. | |

Labelbox, Inc. ("Labelbox") sues V7 Co., V7 Ltd. ("V7"), and Alberto Rizzoli ("V7 Defendants"), as well as Kshitij Gujarati, for misappropriation of trade secrets and other claims regarding Mr. Gujarati's former employment at Labelbox and current employment at V7.  (Dkt. No. 53.)[1]  Now pending before the Court is V7 Defendants' motion to dismiss Labelbox's state law claims.  (Dkt. No. 75.)  Having carefully considered the parties' submissions, the Court concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), and GRANTS V7 Defendants' motion to dismiss because Labelbox's state law claims, as currently pled, are superseded by the California Uniform Trade Secrets Act.

**BACKGROUND**

**I.      AMENDED COMPLAINT ALLEGATIONS**

Labelbox is a "data annotation and management platform that provides high quality data to the world's top artificial intelligence ('AI') laboratories developing machine learning ('ML') technology."  (Dkt. No. 53 ¶ 9.)  Labelbox hired Mr. Gujarati as a Senior Product Manager in 2024 and promoted him to Head of Product and Director of Frontier AI in March 2025.  (*Id.* ¶ 12.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court
Northern District of California

As Head of Product and Director of Frontier AI, Mr. Gujarati was a senior employee "responsible for overseeing Labelbox's industry-leading AI data-labeling operations and managing some of Labelbox's largest client accounts," and had "access to confidential, proprietary, and trade secret information on Labelbox's technological offerings and its individual customer relationships and datasets." (*Id.* ¶¶ 46-47.) Mr. Gujarati's employment and access such to information "was conditioned on his agreement to maintain the confidentiality of that information and to refrain from using it after his departure from Labelbox" through "a Proprietary Information and Inventions Agreement ('PIAA')." (*Id.* ¶¶ 12, 48.) Mr. Gujarati's Employment Agreement also required him to "refrain[] from working in a role that created a conflict of interest for Labelbox while he was a Labelbox employee." (*Id.* ¶ 50.) Mr. Gujarati gave Labelbox notice of his resignation on August 15, 2025; informed Labelbox "he did not intend to join a competitor and was leaving the company to work as a consultant in the electric vehicle industry;" and left Labelbox on September 1, 2025. (*Id.* ¶ 52.)

Labelbox later discovered Mr. Gujarati had, beginning in May 2025, been interviewing with V7, an "AI company that competes directly with Labelbox." (*Id.* ¶¶ 10, 53.) Between June and August 2025, Mr. Gujarati saved Labelbox documents "spann[ing] multiple clients and a wide range of topics, including internal process related and technical documents" to a personal Google Drive folder. (*Id.* ¶¶ 54, 55.) "Much of Gujarati's August downloading activity directly corresponded to requests from Rizzoli," V7's Co-Founder and CEO, asking for assistance with RFP submissions." (*Id.* ¶ 55.) For example, on August 4, 2025, Mr. Rizzoli requested Mr. Gujarati's help with pricing for a project proposal, and Mr. Gujarati "detail[ed] how he 'typically' prices deals[,] revealed the specific margins Labelbox applies on top of contractor rates, . . . reference[d] pricing from another key Labelbox client and then 'deriving from that,' [] recommended specific dollar amounts for Rizzoli to use in the proposal." (*Id.* ¶ 56.) On August 13, 2025, Mr. Rizzoli against asked for help on an RFP for a Labelbox client, and the next day, Mr. Gujarati said "he would send 'global tiered rates that [V7] can use for reference.'" (*Id.* ¶ 57.) V7 and Mr. Gujarati "worked together to conceal Gujarati's activities from Labelbox," including allowing him to send a paycheck rather than conduct a background check, which would have

United States District Court
Northern District of California

informed Labelbox he was going to work for a competitor.  (*Id.* ¶ 58.)

In early October 2025, Labelbox learned via LinkedIn Mr. Gujarati "had started a position as General Manager Frontier Data" at V7.  (*Id.* ¶ 13.)  Labelbox sent Mr. Gujarati a letter "reminding him of his contractual obligation to maintain the confidentiality of Labelbox's proprietary and trade secret information" and asking him to "confirm his understanding of his ongoing obligations and compliance" by October 27, 2025.  (*Id.* ¶ 14.)  Labelbox sent a similar letter to V7.  (*Id.*)  Gujarati "provided a terse email response," and V7 "never responded."  (*Id.* ¶ 15.)  Labelbox then "conducted an internal investigation of Gujarati's digital activities in the weeks leading up to his departure," and discovered "throughout the summer, Gujarati accessed, viewed, and downloaded critically important and highly sensitive trade secret information that was unrelated to his responsibilities at the time and/or concerned client accounts with which he was not involved."  (*Id.* ¶¶ 15-16.)

## II.    PROCEDURAL HISTORY

On November 24, 2025, Labelbox sued (1) Mr. Gujarati and V7 for trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, 1839; and (2) Mr. Gujarati for breach of contract.  (Dkt. No. 1.)  The same day, Labelbox moved for an ex parte temporary restraining order, an order to show cause regarding a preliminary injunction, and expedited discovery.  (Dkt. No. 6.)  The Court granted in part Labelbox's request for a temporary restraining order and set a status conference with Defendants about the remaining requested relief.  (Dkt. No. 21.)  At the status conference, Mr. Gujarati agreed to cooperate in a neutral forensic evaluation and respond to the expedited discovery requests.  (Dkt. No. 27.)  Because V7 represented it had placed Mr. Gujarati on leave and would cooperate with Labelbox to ensure none of Labelbox's material was in V7's possession, the Court did not order V7 to comply with the expedited discovery requests.  (*Id.*)

Labelbox then filed an amended complaint adding Mr. Rizzoli as a defendant and asserting claims: (1) against all Defendants for trade secret misappropriation under the DTSA; (2) against Mr. Gujarati for breach of contract; (3) against V7 and Mr. Rizzoli for tortious interference with a contract; (4) against V7 and Mr. Rizzoli for tortious interference with prospective business

advantage; (5) against V7 and Mr. Rizzoli under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (6) against Mr. Gujarati for breach of the duty of loyalty; (7) against V7 and Mr. Rizzoli for aiding and abetting Mr. Gujarati's breach of the duty of loyalty; (8) against all Defendants for conversion; and (9) against all Defendants for civil conspiracy.  (Dkt. No. 53.)  On January 27, 2026, the Court granted Labelbox's and Mr. Gujarati's stipulation to stay proceedings between them until February 25, 2026 given ongoing settlement negotiations.  (Dkt. No. 72.)  V7 and Mr. Rizzoli now move to dismiss the state law claims against them.  (Dkt. No. 75.)

**DISCUSSION**

California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426-3426.11, "prohibits and provides remedies for the misappropriation of trade secrets."  *Henry Schein, Inc. v. Cook*, No. 16-CV-03166-JST, 2017 WL 783617, at *2 (N.D. Cal. Mar. 1, 2017).  Because "CUTSA provides the exclusive civil remedy for conduct falling with in its terms," it "supersede[s] other civil remedies 'based upon misappropriation of a trade secret.'"  *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) (quoting Cal. Civ. Code § 3426.7), *overruled in other part*, *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011). Specifically, through its "savings clause," Cal. Civ. Code § 3426.7, CUTSA supersedes "'claims based on the same nucleus of fact as trade secret misappropriation.'"  *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *3 (N.D. Cal. Dec. 11, 2012) (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Ops., Inc.*, 171 Cal. App. 4th 939, 962 (2009)); *see also* Cal. Civ. Code § 3426.7(b) (specifying CUTSA does not supersede "civil remedies that are not based upon misappropriation of a trade secret").  So, "[a]t the pleadings stage," courts evaluating whether CUTSA supersedes a plaintiff's other civil claims consider "whether, stripped of facts supporting trade secret misappropriation, the remaining factual allegations can be reassembled to independently support other causes of action."  *See Waymo LLC v. Uber Tech., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) (citation omitted).

However, "suppression based on CUTSA is not strictly limited to information [that] ultimately satisfie[s] the definition of trade secret."  *Snapkeys, Ltd. v. Google LLC*, 442 F. Supp.

United States District Court
Northern District of California

3d 1196, 1205 (N.D. Cal. 2020) (quotation marks and citation omitted). "[T]o state a claim based on the taking of information, a plaintiff must show that he has some property right in such information (*i.e.* that the information is proprietary)." *SunPower Corp.*, 2012 WL 6160472, at *5 (citing *Silvaco*, 184 Cal. App. 4th at 239 n.22). Whenever "the basis of the alleged property right is in essence that the information is [] 'not generally known to the public,' then the claim is sufficiently close to a trade secret claim that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret." *Id.* (quoting Cal. Civ. Code § 3426.1(d)(1))). In such cases, "[i]f the plaintiff identifies no property right outside of trade secrets law, then he has no remedy outside that law, and there is nothing unsound or unjust about holding other theories superseded." *Silvaco Data Sys.*, 184 Cal. App. 4th at 239.

So, CUTSA also supersedes any "claims relying on misappropriation of non-trade-secret confidential information," unless a plaintiff alleges (1) its "property right in the confidential information 'stems from some provision of positive law on grounds qualitatively different from grounds upon which trade secrets are considered property,'" or (2) "'wrongdoing materially distinct from the wrongdoing alleged in a CUTSA claim.'" *Albert's Organics, Inc. v. Holzman*, 445 F. Supp. 3d 463, 474-75 (N.D. Cal. 2020) (quoting *Waymo LLC*, 256 F. Supp. 3d at 1063); *see also SunPower Corp.*, 2012 WL 6160472, at *9 (holding same for "non-trade secret proprietary information").

## I.   TORTIOUS INTERFERENCE WITH CONTRACT AND PROSPECTIVE BUSINESS ADVANTAGE CLAIMS

Labelbox's tortious interference with contract claim alleges V7 Defendants interfered with Mr. Gujarati's PIIA by inducing him to breach "provisions directed to non-disclosure of Labelbox's confidential, proprietary, and trade secret information." (Dkt. No. 53 ¶ 105.) Labelbox's tortious interference with prospective business advantage claim similarly alleges V7 Defendants interfered with Labelbox's relationship with a key client by "using Labelbox's confidential, proprietary and trade secret information specific to" that client. (*Id.* ¶ 112.)

Because, drawing reasonable inferences in Labelbox's favor, Labelbox's tortious interference claims do not allege any wrongdoing distinct from misappropriating Labelbox's

United States District Court
Northern District of California

confidential information, or any distinct property interest in the "confidential, proprietary, and trade secret information," CUTSA supersedes them. *See SunPower Corp.*, 2012 WL 6160472, at *15 (dismissing interference with prospective business advantage claim because the plaintiff "failed to allege facts sufficient for the Court to conclude [it] had a property interest in the non-trade secret information, or that this interest is qualitatively different from the rights conferred by CUTSA"); *Auris Health, Inc. v. Noah Med. Corp.*, No. 22-CV-08073-AMO, 2023 WL 7284156, at *9 (N.D. Cal. Nov. 3, 2023) (dismissing intentional interference with contract claim alleging the defendant "used [former employee] to misappropriate trade secrets," when "the remaining allegations do not constitute any independent injury").

Labelbox's reliance on *Aavid Thermalloy LLC v. Cooler Master Co., Ltd.*, No. 17-CV-05363-JSW, 2018 WL 11348438 (N.D. Cal. June 15, 2018), is unavailing. There, after the court ignored factual allegations that "Aavid conducted unauthorized X-ray imagining thereby misappropriating confidential information," there remained "independent allegations" Aavid had made false statements to third parties regarding Cooler Master's patent infringement. *Id.* at *3. Here, in contrast, once the Court ignores V7 Defendants' alleged interference by soliciting Labelbox's confidential, proprietary and trade secret information, Labelbox's causes of action do not allege any conduct supporting a tortious interference claim.

So, the Court grants V7 Defendants' motion to dismiss Labelbox's tortious interference with contract and prospective business advantage claims as superseded by CUTSA.

## II.     AIDING AND ABETTING BREACH OF LOYALTY CLAIM

Labelbox's aiding and abetting breach of duty of loyalty claim relies on V7 Defendants' "encouragement to Gujarati in committing the breach of his duty of loyalty . . . including by soliciting information from Gujarati related to existing Labelbox clients," and its duty of loyalty claim against Mr. Gujarati is based on his "misappropriating Labelbox's confidential, proprietary, and trade secret information, and providing this information to V7 and Rizzoli, Labelbox's direct competitor." (Dkt. No. 53 ¶¶ 126, 130.) Because Labelbox's duty of loyalty claim "incorporates [Labelbox's] trade secrets as a part of the allegation," the aiding and abetting claim does not "retain[] sufficient independent facts once any facts related to trade secrets are removed." *See*

6

*Symphony Risk Sols. Ins. Servs., Inc. v. Perlite*, No. 24-CV-06437-WHO, 2024 WL 5112479, at *6 (N.D. Cal. Dec. 13, 2024) (cleaned up) (dismissing aiding and abetting breach of fiduciary duty claim).

Labelbox contends V7 Defendants induced Mr. Gujarati to breach a "fiduciary duty [] broader than disclosing trade secrets or confidential information and included a duty not to compete against one's current employer (i.e., a duty of loyalty)." *Albert's Organics*, 445 F. Supp. 3d at 475. While this may be the case, Labelbox's amended complaint only alleges breach of loyalty and aiding and abetting breach of loyalty claims based on Defendants' misappropriation of confidential information.

So, the Court grants V7 Defendants' motion to dismiss Labelbox's aiding and abetting breach of loyalty claim as currently pled as superseded by CUTSA.

## III.   UCL CLAIM

Labelbox alleges V7 Defendants participated in unfair competition by "facilitating the misappropriation of Labelbox's confidential, proprietary and trade secret information through Gujarati in violation of his Proprietary Information and Inventions Agreements to procure trade secret information about Labelbox's business and key clients." (Dkt. No. 53 ¶ 119.) Because Labelbox's alleged unlawful or unfair practice exclusively depends on misappropriation of confidential and trade secret information, CUTSA supersedes Labelbox's UCL claim. *See K.C. Multimedia, Inc.*, 171 Cal. App. 4th at 961-62 (holding CUTSA superseded UCL claim when alleged unlawful practices included only allegations based on misappropriation); *see also Coast Hematology-Oncology Assocs. Med. Grp., Inc. v. Long Beach Mem'l Med. Ctr.*, 58 Cal. App. 5th 748, 769-70 (2020) (affirming dismissal of UCL claim when the plaintiff "describes its unfair competition theory in terms of trade secrets and loss of Coast's confidential information," which "merely repeats the logic of its trade secret claim").

Labelbox contends "competing with [an employer] on the behalf of a competitor while still employed . . . is a clear-cut breach of fiduciary duty, regardless of whether the [competitor] used any trade secrets to do so." *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1175 (N.D. Cal. 2020). However, Labelbox's UCL claim is based entirely on V7 Defendants'

United States District Court
Northern District of California

7

facilitating misappropriation of information and not their facilitating Mr. Gujarati's breach of fiduciary duty by helping his employer's competition.  So, Labelbox's reliance on cases in which the plaintiff alleged some wrongful conduct distinct from misappropriation of confidential information is unavailing.  *See, e.g.*, *Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 508 (2013) (allowing UCL claim "based on Park's wrongful conduct in violating the noncompetition agreement and violating his duty of loyalty to Angelica"); *Prostar Wireless Grp., LLC v. Domino's Pizza, Inc.*, 360 F. Supp. 3d 994, 1007 (N.D. Cal. 2018), *aff'd*, 815 F. App'x 117 (9th Cir. 2020) (allowing fiduciary duty claim alleging "'Domino's usurped the corporate opportunity' of the parties' joint venture"); *Loop AI Labs Inc. v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 5158461, at *3 (N.D. Cal. Sept. 2, 2015) (refusing to dismiss UCL claim given distinct allegations the defendant misrepresented her prior work experience and relationships).

So, the Court grants V7 Defendants' motion to dismiss Labelbox's UCL claim as currently pled as superseded by CUTSA.

## IV.    CIVIL CONSPIRACY CLAIM

Labelbox's civil conspiracy claim is also superseded by CUTSA because Labelbox alleges only: "Defendants formed and operated a conspiracy for the purpose of misappropriating Labelbox's confidential, proprietary and trade secret information."  (Dkt. No. 53 ¶ 144.)  *See Movement Mortg., LLC v. Scrima*, No. 2:23-CV-02904-DJC-CSK, 2024 WL 3011202, at *4 (E.D. Cal. June 11, 2024) (dismissing civil conspiracy claim because "Plaintiff does not allege any conspiratorial conduct unrelated to this scheme to misappropriate trade secrets"); *see also DJO Global, Inc. v. Glader*, No. 3:16-CV-02208-CAB (NLS), 2016 WL 11622009, at *6 (S.D. Cal. Dec. 22, 2016) (refusing to dismiss civil conspiracy claim when the plaintiffs alleged, in addition to misappropriation, the defendants "engaged in acts designed to interfere with DJO's contractual relationships with others, intentionally withheld and diverted communications").  So, the Court grants V7 Defendants' motion to dismiss Labelbox's civil conspiracy claim as superseded by CUTSA.

## V.    CONVERSION CLAIM

Evaluating a conversion claim in the context of CUTSA, "[c]ourts consider whether the

conversion claim is based upon 'tangible, non-trade secret property' or 'intangible' trade secrets or information." *Snapkeys*, 442 F. Supp. 3d at 1207 (quoting *UCAR Tech. (USA) Inc. v. Li*, No. 5:17-CV-01704-EJD, 2018 WL 2555429, at *4-5 (N.D. Cal. June 4, 2018)).  However, "given that discovery has not revealed evidence implicating physical property," Labelbox does not oppose V7 Defendants' motion to dismiss the CUTSA claim.  (Dkt. No. 95 at 11 n.1.)  So, the Court grants V7 Defendants' motion to dismiss Labelbox's conversion claim.

## CONCLUSION

So, the Court GRANTS V7 Defendants' motion to dismiss Labelbox's state law claims against them as superseded by CUTSA.  However, given disparate factual allegations throughout Labelbox's amended complaint and Labelbox's opposition brief, the Court grants Labelbox leave to amend to the extent it can plausibly allege V7 Defendants' wrongdoing distinct from its misappropriation of confidential, proprietary, or trade secret information.  *See Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017) ("[A] district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts." (quotation marks and citation omitted)).  Labelbox's amended complaint is due **April 10, 2026**.  Labelbox may not add additional parties or claims without further leave of Court.

This Order disposes of Docket No. 75.

**IT IS SO ORDERED.**

Dated: March 2, 2026

JACQUELINE SCOTT CORLEY
United States District Judge